**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| K. HELEN YU, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 3:26-cv-3921 |
| | § | |
| WORLDWIDE FLIGHT SERVICES, INC. | § | |
| | § | |
| Defendant. | § | |

# COMPLAINT

Plaintiff K. Helen Yu complains of employment discrimination by Defendant Worldwide Flight Services, Inc., and for cause of action states:

## Parties

1. Plaintiff K. Helen Yu ("Yu" or "Plaintiff") is a Texas resident.

2. Defendant, Worldwide Flight Services, Inc. ("WFS" or "Defendant"), is a Delaware corporation. Its principal place of business is in Irving, Texas. Defendant may be served with process by serving its registered agent for service of process in Texas, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, TX 78701.

## Jurisdiction and Venue

3. This court has jurisdiction over the federal claims asserted herein pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(4), and supplemental jurisdiction over the Texas Labor Code claims pursuant to 28 U.S.C. § 1367(a), because they form part of the same case or controversy.

4. This Court has personal jurisdiction over Defendant because it does a substantial amount of business in Texas and has sufficient minimum contacts with the State of Texas to allow this Court to exercise personal jurisdiction over the Defendant in this case.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district. Venue is also proper in this Court under 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices alleged herein occurred in the State of Texas, and because Yu would have continued to work in Dallas County (and other counties which comprise the Dallas Division) if not for the unlawful employment practices complained of herein.

**Exhaustion of Administrative Remedies**

6. Plaintiff has exhausted administrative remedies and complied with all procedural prerequisites to filing this lawsuit by dual filing a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") and the Texas Workforce Commission, Civil Rights Division ("TWC"), and she has received a notice of her right to sue from the TWC. Yu's claims under 42 U.S.C. § 1981 require no exhaustion.

7. Yu filed her Charge 179 days after her termination. Yu's claims under Chapter 21 of the Texas Labor Code are based on her August 11, 2025 termination. WFS's December 11, 2024 decision to reduce Yu's bonus target and eliminate her long-term incentive eligibility was a discriminatory compensation decision. Each paycheck and incentive payment issued under it on or after April 12, 2025 was a separate unlawful employment practice under 42 U.S.C. § 2000e-5(e)(3)(A) and 29 U.S.C. § 626(d)(3).

## Relevant Facts

### A. Yu's early experiences as General Counsel for WFS

8. Yu is an attorney who has been licensed to practice law since 1994, over 32 years. She has over 20 years of legal experience in the transportation industry, and 10-plus years of experience as a General Counsel.

9. In 2022, Yu interviewed for an open General Counsel position with WFS, a global air cargo logistics company. At the time, WFS had roughly 16,000 employees in the U.S. and annual revenue of over $2 billion. The company was owned by a privately held company, Cerberus Capital Management.

10. During interviews, Yu learned that WFS currently had no in-house attorneys. Michael Simpson, the then Executive Vice President of WFS (the senior executive in the Americas), told Yu the prior WFS General Counsel should have already filled two vacant in-house attorney positions, and the new General Counsel would be expected to hire several attorneys and build an in-house legal team, starting with the two vacant positions.

11. Yu was hired and she began working for WFS as an employee on March 21, 2022. Her job title was Senior Vice President and General Counsel. She reported directly to Michael Simpson.

12. Soon after Yu started, WFS began cost-cutting measures. Simpson told Yu not to hire the two attorneys discussed during her interviews. There was no approved headcount.

13. Yu was not told at the time, but Cerberus was trying to sell WFS. She only learned of a sale when it was publicly announced, and then she realized the hiring freeze and cost-cutting measures were probably an attempt to make WFS look more valuable to prospective buyers.

14. For the first 16 months, Yu ran the legal department without any other in-house attorneys or an approved headcount. Yu personally worked over sixty hours a week on average, managing litigation and overseeing outside counsel, negotiating complex corporate transactions, and reviewing/negotiating contracts. She brought in attorneys seconded to the company from law firms to help with the case load, and for help with the corporate transactional work, she engaged a specialized practice group at a large law firm that serves in-house legal departments.

**B. WFS sold to SATS, and some resulting changes**

15. In September 2022, it was publicly announced that WFS was being sold to SATS, Ltd., a publicly traded Singaporean company. SATS had its own legal department led by Ian Chye, Chief Legal Officer, who was based in Singapore. In May 2023, after the acquisition, Simpson became Chief Executive Officer, Gateway Services, Americas.

16. Chye wanted Yu to report directly to him, but Simpson opposed, claiming that SATS did not pay her salary. As a result, Yu essentially reported to both of them, which was sometimes problematic.

17. For example, in 2024, Yu submitted a detailed proposal to Simpson for staffing the legal department. It described the size and nature of WFS's business and benchmarked the department against legal departments at comparable companies. Industry benchmarks suggested roughly seven attorneys for a company of WFS's size, but Yu asked for only five positions total including one paralegal to keep costs down.

18. Simpson told Yu she needed to get Chye’s approval for the proposal, but Chye said she needed Simpson’s approval. Eventually, only two additional positions were approved, and by mid-2024 Yu hired a corporate attorney and a Legal Litigation & Operations Administrator.

19. Yu continued to meet or exceed all employer expectations, and WFS never disciplined her, placed her on a performance improvement plan, or told her that her performance put her position at risk.

**C. Yu was demoted and a new General Counsel hired**

20. In October 2024, Simpson (then CEO) and the head of Human Resources (SVP of Human Resources, John Derry) told Yu they planned to hire another attorney to assume legal leadership, meaning Yu would no longer hold the top position in WFS's Americas legal function. They told Yu to focus on doing labor and employment law because they said Yu was passionate about that kind of work. They told Yu she would lead labor and employment, with one attorney reporting to her.

21. Yu was surprised. She told Simpson that she loved the company and she was committed to it, and she asked if WFS was getting rid of her. Simpson said no, it was not. He went on to add that Yu's title, compensation, and bonus eligibility would not change. No one told Yu that there were any concerns about the way she was handling the job or the level of her performance.

22. Yu reluctantly accepted the change in reliance on the assurances she had been given, but she saw it for what it was, a demotion.

23. In December 2024, Yu asked for something in writing to memorialize Simpson's commitments about the job title and compensation, but he told Yu she would need to make that request to SATS Chief Legal Officer Ian Chye. Yu therefore spoke with Mr. Chye by phone. Chye said he did not know WFS was replacing her with another attorney and he was upset this was being done without his knowledge. He said he did not think WFS should be replacing his

legal staff. However, Chye declined to put any assurances in writing, saying that is not done in Singapore.

24. On December 11, 2024, Derry sent Yu a letter that he signed and that did not align with the prior assurances she was given. Her title was changed to Vice President of Legal and Employment Counsel. Although her base salary was not changed, her bonus eligibility was cut from 40% of base salary to 30%. Also, prior to this letter, Yu was eligible to receive grants pursuant to the company's Long Term Incentive Scheme, and she had received at least one prior grant worth roughly $310,000 paid over two years. Derry's letter told her she would not be eligible to receive any more such grants.

25. On January 13, 2025, WFS installed Emily Somerville, a white woman born in 1983, as head of its Americas legal function with the title Senior Vice President, Legal – Americas. Somerville was 41; Yu was 55. Somerville had about 12 years of legal experience to Yu's 31. Somerville had never served as a general counsel, and had no labor and employment background. WFS removed Yu from the senior leadership team and required her to report to Somerville, her replacement, instead of to Simpson. WFS also withdrew the promised direct report. Somerville retained the executive compensation package Yu had held, including long-term incentive eligibility. Derry had recruited Somerville and, on information and belief, urged Simpson to approve her hiring.

26. The changes amounted to a demotion and a substantial pay cut, which Yu perceived as a betrayal of the assurances she had been given about her job and compensation. Like many successful professionals, Yu's sense of self and self-worth was linked to her achievements and her reputation.

27. This humiliated Yu, and made her question her own value as a professional and as a person. Yu had to explain to colleagues and internal clients, again and again, why she had been replaced. Yu nevertheless did her best not to let her suffering show, and to soldier on doing her job at the highest level possible.

**D. Derry’s age bias**

28. In early 2025, during a business call that included Yu, Derry, and several others including, but not limited to, Amanda Gayles, then VP of Human Resources, Athena Sherron, VP of HR Administration, and Theresa Rusnak (seconded attorney), the participants on the call discussed the departure of one of Mr. Derry's HR specialists, a woman in her sixties. Mr. Derry openly said her departure was a good thing because the company needed "new blood" with "more energy." Derry made this remark after the October 2024 meeting with Yu. Derry participated in replacing Yu with a 41-year-old, signed the letter reducing her pay, and helped deliver her termination.

29. Yu was 55 years old at the time, and Derry’s statements made her fear that Derry and WFS were biased against older employees in general, and against her in particular. Yu reasonably inferred that she would not have been demoted and her pay would not have been cut but for her age.

**E. Derry’s sex-stereotyped hostility toward assertive women**

30. In May 2023, Derry terminated Tammy Hardge-Stephenson, then Vice President of Human Resources reporting to Derry, after she challenged him on operational deficiencies. Derry characterized her departure by saying she was “a good wartime general, but not good during peacetimes.” On information and belief, Hardge-Stephenson was terminated because Derry did not accept disagreement from her.

31. In July 2023, Yu hired Amberly Morgan as an in-house labor and employment attorney. In addition to supervising outside counsel on litigation matters, Morgan and Yu both worked with business-side employees and Human Resources on matters concerning day-to-day employee relations. Morgan and Yu sometimes had to push back and say no to a proposed course of action when the law required it, and Yu observed that Derry resented this.

32. In or around June or July of 2023, after a meeting with HR, the executive team, and Chye about a pending legal matter, Derry accused Morgan of "throwing him under the bus" to Yu. Derry then refused to work with Morgan and influenced his HR team not to work with her. Morgan left WFS on or about January 3, 2025. Morgan has since filed a claim against WFS in California, alleging that Derry is hostile to assertive women.

33. Derry refused to work with Morgan and directed his HR team not to work with her. When Yu raised legal compliance concerns, Derry also accused Yu of "throwing him under the bus" and that he was fearful of his job after "Legal came after him." Based on Yu's own experiences with Derry and her observations of his interactions with female employees, Yu saw he was biased against strong-willed females, and he treated men and other females who would not disagree with him more favorably.

**F. Simpson and Derry's race and national origin bias**

34. After the SATS acquisition, Simpson repeatedly expressed hostility toward SATS's Asian leadership. He referred to SATS leaders as "they." He said they did not know what they were doing, did not understand how to run the company, and came from a small city-state. Simpson also made clear he resented the frequent trips to Asia.

35. Simpson was frustrated by SATS's requests for information, audits, and data. He instructed the leadership team not to respond to SATS or provide the information. Yu's 2023

review faulted her for not responding to SATS in a timely and accurate manner, but she was just following the CEO's instructions.

36. Mr. Derry said the same things: that SATS leaders did not know what they were doing. Both also told Yu that "America is very different."

37. Yu is ethnically Chinese, as were many of the Singaporean executives at SATS. Yu’s father was born in mainland China and is Chinese, and Yu’s mother was born in Taiwan and she is Taiwanese. Yu was born in Taiwan in 1969. She immigrated to the United States with her family in 1978 and has lived here ever since.

38. The SATS executives whom Simpson disparaged were predominantly ethnically Chinese. SATS’s senior leadership in 2025 included Kerry Mok (President and Group CEO), Bob Chi (CEO, Gateway Services Asia Pacific), Henry Low (CEO, SATS Singapore Hub), Stanley Goh (CEO, Food Solutions), and Ian Chye (Chief Legal Officer), all of whom are ethnically Chinese. When Simpson referred to SATS leaders as “they,” said they “did not know what they were doing,” and called Singapore “a small city-state,” he was directing those remarks at people who share Yu’s Chinese ethnicity.

39. Yu was the only Asian executive in a senior leadership position at WFS, and she understood the negative remarks about Asians to include her and people like her. Simpson and Derry removed Yu from that team and replaced her with a white attorney. SATS’s Chief Legal Officer, Chye, told Yu he had not known of the plan and did not think WFS should replace his legal staff.

**G. Once Somerville had learned the job, WFS terminated Yu.**

40. On Monday, August 11, 2025, Derry and Somerville met with Yu and terminated her employment. Somerville said it was a cost-cutting measure; no other reason was given. Derry

presented Yu with a separation agreement and he explained some of the basic terms. Yu was the only executive WFS terminated for cost reasons. WFS conducted no reduction in force. WFS and SATS were publicly reporting profitability.

41. WFS terminated Yu about seven weeks before her Long-Term Incentive payment of about $155,000 was due on September 30, 2025. Yu did not receive it.

42. Yu returned to her office to collect herself mentally and emotionally, and to gather her things.

43. She left before the end of the day, and that was her last day at WFS.

44. The discrimination, demotion, and termination all took a toll on Yu. She experienced heart palpitations, crying episodes, shortness of breath, and difficulty concentrating. Yu began treatment with a psychologist, who prescribed anxiety medication. Yu is therefore seeking compensatory damages.

**H. Pretext**

45. WFS has given shifting and contradictory reasons for its actions.

46. On September 25, 2025, WFS gave Yu a reference letter signed by Somerville stating that Yu's departure "was due to a position elimination as part of broader organizational restructuring and cost-cutting initiatives," and that Yu "reliably displayed professionalism, sound judgment, and a collaborative approach" and "had strong operational instincts."

47. In its submissions to the TWC, WFS stated that Yu's position was eliminated and that she was not replaced by a non-Chinese employee. After terminating Yu, WFS hired two attorneys, with about four to nine years of experience, to perform her labor and employment work. Neither is Asian or of Chinese ancestry.

48. In its submissions to the TWC, WFS claims Yu failed to develop a plan to hire and build out the legal team. This is untrue because WFS initially put a freeze on hiring, and because Yu did the work to draft proposals which she submitted to the company for review and approval.

49. In its submissions to the TWC, WFS asserted that Yu lacked the corporate securities background required after the SATS acquisition. WFS hired Yu in 2022, while it was owned by Cerberus, knowing she had no securities background. WFS is a privately held subsidiary with no U.S. securities reporting obligations. SATS is listed on the Singapore Exchange, and SATS's Chief Legal Officer and his team of attorneys practicing in Singapore handled that reporting.

50. In its submissions to the TWC, WFS claims there were multiple performance issues. This is evidence of pretext for several reasons. First, performance was not given as a basis for termination at the time, so this is a shifting explanation (which can be evidence of pretext). Second, the issues were never presented to Yu at the time, suggesting these performance issues were not the reason for the termination. Third, the alleged performance issues are untrue.

**I. Facts relevant to all claims**

51. At all times during her employment, Yu was qualified for her position, and she was performing all of her duties at a level that met or exceeded all legitimate expectations of her employer. Her performance reviews were all favorable, and she earned and received bonuses and incentive compensation every time she was eligible for such payments, including a bonus at 150% of target for the most recently completed year. Yu was never placed on a performance improvement plan, and was never disciplined.

52. At all times during Yu's employment, WFS had more than 500 employees.

**First Cause of Action – Age Discrimination**

53. Plaintiff asserts a claim of age discrimination based on violations of 29 U.S.C. § 623, and section 21.051 of the Texas Labor Code.

54. Plaintiff incorporates all preceding paragraphs of this Complaint here, by reference.

55. Yu was 55 when the age discrimination complained of herein commenced in December 2024, and she was 56 at the time of her termination on August 11, 2025.

56. From December 2024 through August 11, 2025, because of Yu's age, WFS subjected Yu to adverse employment actions (described above), including demotion, reduction of her bonus target, elimination of her long-term incentive eligibility, and termination, that materially altered the terms, conditions, and privileges of her employment. Yu's Chapter 21 age claim is based on her termination.

57. Yu was initially replaced by a substantially younger employee, Somerville, and required to train her replacement in the transition. Once Somerville acclimated to the position, WFS completed the process by terminating Yu's employment.

58. After Yu's August 11, 2025 termination, WFS hired two substantially younger female attorneys to replace her.

59. WFS either knew that its conduct was unlawful and violated the ADEA and the Texas Labor Code, or it acted with reckless disregard to whether its actions were unlawful.

60. WFS acted with malice or reckless indifference to Yu's right to be free from age discrimination.

61. Defendant's unlawful age discrimination caused Yu to sustain injuries that justify a monetary award for her economic and non-economic damages, and injunctive relief.

**Second Cause of Action – Race and Ethnicity Discrimination**

62. Plaintiff asserts a claim under 42 U.S.C. § 1981 for discrimination based on her race (Asian) and her Chinese ancestry and ethnic characteristics.

63. Plaintiff incorporates all preceding paragraphs of this Complaint here, by reference.

64. From December 2024 through August 11, 2025, because of Yu's race and Chinese ancestry, WFS reduced her compensation, demoted her, and terminated her, impairing her right to make and enforce her employment contract.

65. After Yu's August 11, 2025 termination, WFS hired two non-Chinese, non-Asian attorneys to replace her.

66. WFS either knew that its conduct was unlawful and violated 42 U.S.C. § 1981, or it acted with reckless disregard to whether its actions were unlawful.

67. WFS acted with malice or reckless indifference to Yu's right to be free from race discrimination.

68. Defendant's unlawful race and ethnicity discrimination caused Yu to sustain injuries that justify a monetary award for her economic and non-economic damages, and injunctive relief.

**Third Cause of Action – Race Discrimination**

69. Plaintiff asserts a claim of race discrimination under 42 U.S.C. § 2000e-2(a) and section 21.051 of the Texas Labor Code.

70. Plaintiff incorporates all preceding paragraphs of this Complaint here, by reference.

71. Yu's race, Asian, was a motivating factor in WFS's compensation decision, the demotion, and termination. WFS treated Yu less favorably than it treated non-Asian employees and it replaced Yu with non-Asian attorneys.

72. WFS either knew that its conduct was unlawful and violated Title VII and the Texas Labor Code, or it acted with reckless disregard to whether its actions were unlawful.

73. WFS acted with malice or reckless indifference to Yu's right to be free from race discrimination.

74. Defendant's unlawful race discrimination caused Yu to sustain injuries that justify a monetary award for her economic and non-economic damages, and injunctive relief.

**Fourth Cause of Action - Sex Discrimination**

75. Plaintiff asserts a claim of sex discrimination based on violations of 42 U.S.C. § 2000e-2(a) and section 21.051 of the Texas Labor Code.

76. Plaintiff incorporates all preceding paragraphs of this Complaint here, by reference.

77. Because of Yu's sex, and her failure to conform to Derry's stereotype that women should not challenge him, WFS demoted Yu, reduced her compensation, and terminated her. Derry participated in each decision and did not treat male executives who disagreed with him the same way. Yu's sex was a motivating factor in each action.

78. WFS either knew that its conduct was unlawful and violated Title VII and the Texas Labor Code, or it acted with reckless disregard to whether its actions were unlawful.

79. WFS acted with malice or reckless indifference to Yu's right to be free from sex discrimination.

80. Defendant's unlawful sex discrimination caused Yu to sustain injuries that justify a monetary award for her economic and non-economic damages, and injunctive relief.

**Fifth Cause of Action – National Origin Discrimination**

81. Plaintiff asserts a claim of national origin discrimination based on violations of 42 U.S.C. § 2000e-2(a), and section 21.051 of the Texas Labor Code.

82. Plaintiff incorporates all preceding paragraphs of this Complaint here, by reference.

83. Yu was born in Taiwan and is of Chinese national origin. Because of her national origin, WFS reduced her compensation and terminated her. Simpson repeatedly disparaged SATS's Asian leadership, saying they "did not know what they were doing" and came from "a small city-state." Derry said the same about SATS leaders' competence. Both told Yu that "America is very different." WFS replaced Yu with attorneys who are not of Chinese national origin. Yu's national origin was a motivating factor in each action.

84. WFS either knew that its conduct was unlawful and violated Title VII and the Texas Labor Code, or it acted with reckless disregard to whether its actions were unlawful.

85. WFS acted with malice or reckless indifference to Yu's right to be free from national origin discrimination.

86. Defendant's unlawful national origin discrimination caused Yu to sustain injuries that justify a monetary award for her economic and non-economic damages, and injunctive relief.

**Equitable and Injunctive Relief**

87. Defendant intentionally engaged in the unlawful employment practices described in this Complaint. This Court may therefore enjoin Defendant from engaging in such unlawful employment practices, and order other equitable relief as this Court deems appropriate.

88. Yu therefore requests an award of injunctive relief prohibiting Defendant from further engaging in the unlawful employment practices described in this Complaint.

89. Yu also requests reinstatement to her position, with back pay, or in the alternative, front pay.

**Jury Demand**

90. Plaintiff demands a trial by jury on all claims asserted in this Complaint for which a trial by jury is allowed by law.

**Prayer for Relief**

WHEREFORE, Plaintiff requests judgment against Defendant for all relief to which she may be entitled, including but not limited to:

(1) Judgment awarding Plaintiff all compensable damages, including all economic losses, back pay, lost past and future income and benefits of employment, front pay, and compensatory damages such as suffering, mental anguish, emotional distress, inconvenience, loss of personal status and dignity, and loss of enjoyment of life;

(2) Judgment awarding liquidated damages for willful violations of the ADEA;

(3) Judgment awarding punitive damages, as permitted by law;

(4) Judgment awarding all costs of court, expert witness fees, and attorney fees recoverable by law;

(5) Judgment awarding such other relief to which Plaintiff is entitled by law;

(6) Judgment awarding all pre-judgment and post-judgment interest to which Plaintiff is entitled by law;

(7) Judgment enjoining Defendant and its directors, officers, owners, agents, successors, employees and representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages described in this Complaint; and

(8) Judgment awarding all other and further relief to which Plaintiff is entitled.

Respectfully submitted,

/s/ Donald E. Uloth

Donald E. Uloth
Texas Bar No. 20374200
Law Office of Donald E. Uloth
18208 Preston Rd. Suite D-9 # 261
Dallas, Texas 75252
Phone: (214) 989-4396
Email: don.uloth@uloth.pro
Counsel for Plaintiff